FILED
CLERK
11/29/2012 12:11 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANNETTE LORBER,

               Plaintiff,

      -against-

JONATHAN WINSTON, SHELDON M.
GANZ, SHELDON M. GANZ, CPA, P.C.,
EVA TEHRANI, HSBC BANK USA,
NATIONAL ASSOCIATION, HSBC
SECURITIES (USA) INC.,

               Defendants.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
12-CV-3571 (ADS) (ETB)

**APPEARANCES:**

**Lowenstein Sandler PC**
*Former attorneys for the plaintiff*
1251 Avenue of the Americas
New York, NY 10020
    By:  Ira Lee Sorkin, Esq.
          Savannah Stevenson, Esq.
          Nicole Pappas DeBello, Esq., Of Counsel

**Judd Burstein PC**
*Attorney for defendant Jonathan Winston*
1790 Broadway
Suite 1501
New York, NY 10019
    By:  Judd Burstein, Esq., Of Counsel

**Matalon Shweky Elman PLLC**
*Attorneys for the defendants Sheldon M. Ganz & Sheldon M. Ganz, CPA, PC*
450 7th Avenue 33rd Floor
New York, NY 10123
    By:  Howard I. Elman, Esq., Of Counsel

1

**Law Offices of Eric Franz PLLC**
*Attorney for defendant Eva Tehrani*
747 Third Avenue
20th Floor
New York, NY 10017
    By:   Eric P. Franz, Esq.
           Andrew Leopoldo Mancilla, Esq., Of Counsel

**Law Offices of Steven D. Isser**
*Attorney for defendant Eva Tehrani*
1359 Broadway
Suite 2001
New York, NY 10018
    By:   Steven David Isser, Esq., Of Counsel

**Sills Cummis & Gross P.C.**
*Attorneys for defendants HSBC Bank USA, National Association & HSBC Securities (USA) Inc.*
30 Rockefeller Plaza
New York, NY 100112
    By:   Jonathan Young, Esq.
           Andrew W. Schwartz, Esq., Of Counsel

<u>**NO APPEARANCE**</u>

513 Central Park LLC (Relief Defendant)

**SPATT, District Judge**.

      On July 18, 2012, plaintiff Annette Lorber ("the Plaintiff") commenced this action by filing a Complaint against multiple defendants, which was thereafter reduced to the following: Jonathan Winston ("Winston"); Sheldon M. Ganz ("Ganz"); Sheldon M. Ganz, CPA, P.C.; Eva Tehrani ("Tehrani"); HSBC Bank USA, National Association; and HSBC Securities (USA) Inc. (collectively, "the Defendants").  The Plaintiff subsequently filed a First Amended Complaint on September 14, 2012.

      On August 10, 2012, the defendant Winston moved to disqualify counsel for the Plaintiff, Ira Lee Sorkin, Esq., based on the grounds that (1) Sorkin previously represented Winston in two proceedings before the National Association of Securities Dealers ("the NASD") and (2) the

2

defendant Winston had consulted with Sorkin about Sorkin representing him when he was being investigated for matters connected with his criminal indictment for securities fraud. Subsequently, on October 17, 2012, Winston filed a second motion to dismiss or, in the alternative, to disqualify counsel for the Plaintiff, Ira Lee Sorkin, Esq., based on Sorkin's alleged used of privileged material related to the defendant Winston's abovementioned criminal case.

On November 24, 2012, the Court issued an Order granting Winston's motion to disqualify Sorkin. The Court held that there was a possibility of trial taint due to Sorkin's previous representation of Winston at the NASD proceedings and his prior consultation with Winston concerning Winston's criminal investigation. The Court also found that Sorkin's use of a "Memorandum of Law in Support of Defendant's Motion for Termination of Probation Pursuant to 18 U.S.C. § 3564(c) and Fed. R. Crim. P. Rule 32.1 and Discharge from Supervision" ("the Probation Memo") was an additional ground for disqualifying Sorkin, because the Probation Memo was protected by the work product privilege. However, the Court "decline[d] to dismiss the Plaintiff's First Amended Complaint." (Dkt. No. 136, pg. 26.)

In light of the Court's November 24, 2012 Order, Winston now requests, by letter dated November 27, 2012, that (1) "the docket in this case, other than Orders issued by the Court, be sealed, so that new counsel will not be tainted by [] Sorkin's . . . use of the Probation Memo or by information gleaned from [] Sorkin's prior representation of [] Winston" and (2) "[] Sorkin . . . be barred from directly or indirectly communicating with prospective or retained new counsel, or advising Plaintiff with respect to potential new counsel." (Dkt. No. 139.) Rather, Winston argues that "Sorkin should be limited to providing documents (other than copies of the two Complaints in this case) to prospective or retained new counsel" and that "[h]e should not be

3

permitted to discuss his views of the case or provide any of his or his firm's work product." (Dkt. No. 139.)

In response, Sorkin asserts, on behalf of himself and his law firm, that it "would be in violation of our duties as Plaintiff's counsel, as well as the applicable Rules of Professional Conduct, if we did not assist in: (1) helping Plaintiff find new counsel pursuant to the Order; and (2) helping Plaintiff's new counsel transition into the case by providing relevant documents, facts, strategy, procedural history, and other relevant information." (Dkt. No. 141.)  Further, Sorkin contends that if he did not provide the Plaintiff with the abovementioned assistance, the Plaintiff would be "severely prejudice[d] . . . due to no fault of her own." (Dkt. No. 141.)

As an initial matter, the Court notes that its November 24, 2012 Order did not dismiss the First Amended Complaint. Instead, as quoted above, the Court in its Order explicitly "decline[d] to dismiss the Plaintiff's First Amended Complaint." (Dkt. No. 136, pg. 26.)  Accordingly, the First Amended Complaint remains the operative pleading in this case.  Thus, to the extent that Winston requests that the Plaintiff's new counsel be denied access to the First Amended Complaint, the Court denies the application.

Winston's request raises issues concerning the transition between disqualified counsel and new counsel, which is separate and distinct from the attorney disqualification issues that were central to the November 24, 2012 Order.  See Chronicle Publishing Co. v. Hantzis, 732 F. Supp. 270, 273 (D. Mass. 1990), stay den. by, writ of mandamus den. by, appeal dismissed by Chronicle Pub. Co. v. Hantzis, 902 F.2d 1028 (1st Cir. Mass. 1990) ("The questions of (1) attorney disqualification and (2) the subsequent work product turnover to substitute counsel are separate and distinct."); Behunin v. Dow Chemical Co., 642 F. Supp. 870, 872 (D. Colo. 1986) ("[T]he propriety of work product turnover should be considered apart from the underlying

4

determination of whether withdrawal or disqualification is called for."). It appears to the Court that these issues may have yet to be addressed by the Second Circuit. Nonetheless, courts sitting in other circuits have addressed similar issues and have "rejected a per se rule that the work product of a disqualified law firm is automatically 'tainted' and, therefore, inaccessible to substitute counsel." Id. (citing First Wisconsin Mortg. Trust v. First Wisconsin Corp., 584 F.2d 201, 204-05 (7th Cir. 1978) (en banc) ("[S]uch an automatic or per se equation of denial of the work product to the disqualification of representation is not good law and the application of such a rule without more requires reversal. . . . We see no reason for an irrebuttable presumption merely from dual representation in the conflict context to the effect that whenever cause of disqualification exists any lawyer work thereafter is lost work irrespective of its nature or any other pertinent factors."); see also International Business Machines Corp. v. Levin, 579 F.2d 271, 283 (3d Cir. 1978) (disagreeing with "a legal tenant . . . against permitting the turnover of a disqualified attorney's work product"); Arnold v. Cargill Inc., Civil No. 01-2086 (DWF/AJB), 2004 U.S. Dist. LEXIS 26793, at *10 (D. Minn. Nov. 23, 2004) ("[T]he weight of authority leads the Court to conclude that the specified court filings and orders at issue here are not per se tainted simply because [the Plaintiffs' counsel] was disqualified."); Behunin, 642 F. Supp. at 872.

Rather, Courts "have adopted a flexible case-by-case approach to determine whether to allow access to disqualified counsels' work product." Arnold, 2004 U.S. Dist. LEXIS at *10-11. See First Wisconsin, 584 F. 2d at 202 ("The answer to this issue . . . is not a per se preclusion but must be a flexible one based upon an examination of the particular facts of the case under consideration."); Behunin, 642 F. Supp. at 872 ("Whether disqualification, or in this case withdrawal, eliminates the harm which led to withdrawal should be determined on a case by case basis."). Moreover, "the court should employ a balancing approach" to determine whether "the

5

possibility that confidences or secrets will be used against the disqualifying party outweighs the deleterious effect of unavailability [of the work product] on the abandoned client should the court deny the work product request." Behunin, 642 F. Supp. at 873, n. 3. In this regard, courts have emphasized that courts can "lessen[] the hardship" caused to a party by disqualification of her counsel "by allowing [the disqualified counsel] to provide [the] substitute counsel with all [relevant] work product." EEOC v. Orson H. Gygi Co., 749 F.2d 620, 622 (10th Cir. 1984). See also First Wisconsin, 584 F.2d at 205 ("This is not a matter of penalty against the lawyer. The lawyer's penalty is the disqualification. The penalty from not having the work product made available to substitute counsel is against the client.").

With this in mind, the Court, exercising its discretion, finds that the burden to the Plaintiff if Winston's request is granted outweighs the possibility of taint if the request is not granted. Specifically, if Winston's request was granted, the Plaintiff would be forced to start this litigation over, as her new counsel would have to re-gather all the relevant facts and caselaw pertaining to this case. Further, she would be denied the benefit of her former counsel's investigation and review of hundreds of documents, as well as the report of a handwriting expert. See Arnold, 2004 U.S. Dist. LEXIS at *14-15 ("Denying potential successor counsel access to the specified materials at issue here would greatly harm Plaintiffs. Not only would it jeopardize their chances of obtaining replacement counsel, it would destroy the work already performed and require successor counsel to effectively start over."). Accordingly, the Court denies Winston's request and permits Sorkin and his firm to (1) assist the Plaintiff in obtaining new counsel and (2) provide the Plaintiff's new counsel with all documents or exhibits, including their work product, related to the present case.

However, in reaching this decision, the Court does not ignore Winston's concerns regarding the possibility of taint. As such, the Court prohibits Sorkin and his firm from:

> (1) providing the Plaintiff's new counsel with any documents or exhibits that have anything to do with Sorkin's previous representation of Winston at the NASD proceedings or his prior consultation during Winston's criminal investigation;
> (2) discussing with the Plaintiff's new counsel anything having to do with Sorkin's previous representation of Winston at the NASD proceedings or his prior consultation with Winston during Winston's criminal investigation; and
> (3) providing the Plaintiff's new counsel with any documents or exhibits that have anything to do with the Probation Memo.
> (4) discussing with the Plaintiff's new counsel anything having to do with the Probation Memo.

Lastly, with respect to the Court's November 26, 2012 Order, the Court grants Sorkin permission to file the corrected exhibits to the First Amended Complaint.

**SO ORDERED.**
Dated: Central Islip, New York
November 29, 2012

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge

7